UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------X
MYRIAM PLONQUE,

                                 Plaintiff,

              - against -

ST. JOHN'S EPISCOPAL HOSPITAL,

                                Defendant.
------------------------------------------------------------------X

Case No.

**COMPLAINT**

**PLAINTIFF DEMANDS
A TRIAL BY JURY**

Plaintiff, Myriam Plonque, by her attorneys, Phillips & Associates, Attorneys at Law, PLLC, hereby complains of the Defendant, St. John's Episcopal Hospital, and alleges as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq.*, ("NYCHRL") and seeks damages to redress injuries Plaintiff suffered as a result of being subjected to discrimination by the Defendant on the basis of her pregnancy.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3.    This Court has supplemental jurisdiction over Plaintiff's city law claims pursuant to 28 U.S.C. § 1367.

4.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within the Eastern District of New York. 28 U.S.C. § 1391(b).

## PROCEDURAL PREREQUISITES

5.    Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunity Commission ("EEOC").

6.    Plaintiff received a Notice of Right to Sue from the EEOC on or about December 27, 2016 with respect to the herein charges of discrimination. A copy of the Notice is annexed hereto.

7.    This Action is being commenced within 90 days of receipt of said Right to Sue.

## PARTIES

8.    Plaintiff MYRIAM PLONQUE ("PLONQUE") is a resident of the State of New York and County of Queens.

9.    Defendant ST. JOHN'S EPISCOPAL HOSPITAL is an active domestic not-for-profit corporation, with its principal place of business located at 327 Beach 19th Street, Far Rockaway, NY 11691.

## MATERIAL FACTS

10.    Defendant ST. JOHN'S EPISCOPAL HOSPITAL offered Plaintiff PLONQUE a position as a Nurse Supervisor by extending a formal job offer through Plaintiff PLONQUE's recruiter, Shelly Landeau, on February 24, 2016. Plaintiff's salary was to be approximately $101,000.00.

11.    Ms. Landau advised Plaintiff PLONQUE of the job offer and told her to contact the Human Resources Director at ST. JOHN'S EPISCOPAL HOSPITAL, Joan Crawford, regarding meetings and employee health services.

12.    Per Ms. Landau's instructions, on or about February 25, 2016, Plaintiff PLONQUE called and e-mailed Ms. Crawford and Defendant's job offer. In response, Ms. Crawford asked

Plaintiff PLONQUE for her availability to meet with Ms. Crawford and visit Employee Health Services.

13. Plaintiff PLONQUE agreed to meet Ms. Crawford on March 3, 2016.

14. Subsequently, on or about February 26, 2016, Plaintiff PLONQUE submitted a resignation letter to her employer New York-Presbyterian/Columbia University Medical Center, where Plaintiff was working at the time.

15. On March 3, 2016, Plaintiff PLONQUE went to Employee Health Services at ST. JOHN'S EPISCOPAL HOSPITAL where she met with Sandra, a Nurse Practitioner employed by Defendant.

16. Sandra took blood samples from Plaintiff PLONQUE, in part to check Plaintiff's immunizations. Sandra then informed Plaintiff PLONQUE that Sandra would be need to take an X-Ray of Plaintiff PLONQUE's chest as part of the examination and asked Plaintiff PLONQUE whether she was pregnant. Plaintiff PLONQUE responded that she was not sure. Sandra then stated that she would perform a pregnancy test on the blood she had just collected from Plaintiff PLONQUE. Plaintiff PLONQUE consented to this test.

17. Plaintiff PLONQUE met with Ms. Crawford immediately after leaving Employee Health Services. Plaintiff PLONQUE submitted her degrees, certificates, and diplomas to Ms. Crawford and signed some paperwork.

18. That same day, March 3, 2016, at approximately 3:00 p.m. or 4:00 p.m., Plaintiff PLONQUE received a voicemail from Sandra asking Plaintiff PLONQUE to call Sandra as soon as possible. When Plaintiff PLONQUE returned Sandra's call, Sandra announced that Plaintiff PLONQUE's pregnancy test came back positive. Sandra then stated that it was up to Plaintiff PLONQUE to either let others know about her pregnancy at that time or wait until the end of the

pregnancy to continue with the employment process. Plaintiff PLONQUE asked for Sandra's opinion on the matter. Sandra expressed that Plaintiff PLONQUE should request a formal reading of her most recent chest X-Ray and continue with the employment process.

19. Plaintiff PLONQUE then called Ms. Crawford and informed Ms. Crawford of her pregnancy. In response, Ms. Crawford stated, "See you were too excited! That's what happens!" Confused, Plaintiff PLONQUE asked Ms. Crawford, "What do you mean? What do I do now?" Ms. Crawford replied, "What did Sandra tell you?" Plaintiff PLONQUE responded that Sandra informed Plaintiff that Sandra could give Plaintiff preliminary clearance until Plaintiff obtained her formal X-Ray reading. Ms. Crawford then abruptly stated, "Say no more, I'll call you right back." However, Ms. Crawford never called Plaintiff back.

20. The next day, on or about March 4, 2016, Sandra called Plaintiff PLONQUE and asked her to return to Employee Health Services as Plaintiff PLONQUE's results were ready for her review.

21. When Plaintiff PLONQUE arrived, Sandra informed Plaintiff PLONQUE that her tests revealed that Plaintiff did not show an immunity to mumps and that the mumps inoculation is a vaccine that Plaintiff PLONQUE could not receive while pregnant. Plaintiff responded that she had already received the vaccine for the mumps.

22. Sandra then told Plaintiff PLONQUE that the only thing Plaintiff could do would be to locate her immunization record. However, this was not possible for Plaintiff PLONQUE as she was not born in the United States and thus received her vaccination abroad. When Plaintiff PLONQUE asked whether there were any other options, Sandra replied that Plaintiff could see her own doctor and attempt to get that information from him.

4

23. Plaintiff PLONQUE felt that something was not right and asked Sandra whether there could be a mistake in the results and whether Plaintiff PLONQUE could see her doctor to get the same tests performed and obtain the results. Sandra discouraged Plaintiff PLONQUE from getting tested by her own doctor, and stated that even if her doctor performed the blood tests it would not help because Defendant already had their results.

24. Plaintiff PLONQUE was able to see her doctor, Michael Petelis, the same day. Dr. Petelis referred Plaintiff to Sunrise Medical Laboratories for blood work for Plaintiff PLONQUE's MMR immunization and pregnancy. Plaintiff PLONQUE then recounted the incident with Defendant to her doctor, who stated that it was very unlikely that Plaintiff PLONQUE's MMR which were initially positive [Plaintiff had previously been tested and received a positive result for the mumps immunization] could now be negative, unless there was a mistake. Her doctor then asked which hospital Plaintiff was tested in. When Plaintiff PLONQUE replied ST. JOHN'S EPISCOPAL HOSPITAL, her doctor exclaimed, "Coming from them, I wouldn't be surprised if they refused to hire you because of your pregnancy."

25. The next morning, Plaintiff PLONQUE received a call from her doctor's office confirming her pregnancy and informing Plaintiff PLONQUE that her test results for the mumps came out positive. Plaintiff's anti-body for mumps came back at 85.1. Anything over 10.9 shows immunity.

26. Upon information and belief, Plaintiff's results could not have been negative for the mumps vaccine one day prior to showing positive at 85.1.

27. On or about March 7, 2016, Plaintiff PLONQUE called Sandra and informed her that something was not right with the results of Defendant's tests, as Plaintiff PLONQUE received conflicting results with respect to her MMR immunization from her own doctor. Plaintiff

5

PLONQUE then proceeded to ask Sandra for a copy of her medical records, to which Sandra responded that she would have to check with some other people before giving them to her. Shocked, Plaintiff PLONQUE protested that she had a right to request her own medical records and that Sandra should not need to ask for permission from someone else to give Plaintiff PLONQUE her own medical records. Sandra responded that someone would call Plaintiff PLONQUE back. Sandra then called Plaintiff PLONQUE about 30 minutes later and asked Plaintiff to return to the Employee Health Services for retesting, admitting that there may have been a mistake with her results.

28. The next day Plaintiff PLONQUE went to see Sandra who performed another blood test on Plaintiff PLONQUE. Once she was finished, Plaintiff PLONQUE said, "What now? All of a sudden the result will change from negative to positive? You should be ashamed of yourself as a professional. Falsifying results because I'm pregnant is not professional and you shouldn't be working as a professional nurse." Sandra responded, "So you are accusing me of messing up your results?" Plaintiff replied, "I did not accuse anyone. You and your conscience should let you know whether you should feel guilty or not about it." Sandra retorted, "I don't blame you for thinking something like that about me, you don't know me and I don't know you." Plaintiff PLONQUE then asked Sandra again for her medical records. However, Sandra stated that she would give Plaintiff PLONQUE the records after the results for which Plaintiff PLONQUE was just tested came back.

29. Plaintiff PLONQUE then went directly to the Human Resources Office to drop off her passport, since she had not submitted it during her first meeting with Ms. Crawford. As Plaintiff PLONQUE approached the door, she heard Ms. Crawford say, "She's not allowed . . ."

6

As soon as Ms. Crawford saw Plaintiff PLONQUE, her facial expression changed. Five minutes later, Ms. Crawford asked Plaintiff PLONQUE to enter the office.

30. As soon as Plaintiff PLONQUE entered the office she said, "I'm sure by now you've heard everything that has been going on between Sandra and I." Ms. Crawford simply replied, "No, not really" and then added that they weren't allowed to discuss any information about Plaintiff's health condition due to HIPAA. Plaintiff PLONQUE then gave Ms. Crawford her passport, which Ms. Crawford copied.

31. Then, on or about March 10, 2016, at approximately 4:00 p.m., Ms. Landeau called Plaintiff PLONQUE and informed her that Defendant was rescinding their job offer to Plaintiff. Plaintiff PLONQUE was shocked by the sudden news and asked Ms. Landeau whether she knew why Plaintiff's offer was rescinded. Ms. Landeau conveyed to Plaintiff PLONQUE that Defendant informed her that Plaintiff PLONQUE was not cleared medically. Plaintiff then asked Ms. Landeau whether Defendant gave her the result of Plaintiff's last test or whether they said anything about it. Ms. Landeau replied that they had not done either.

32. Plaintiff PLONQUE called Defendant numerous times to get a copy of her medical records. On or about March 11, 2016, Plaintiff PLONQUE called Michelle Burton Carter, the secretary in the Human Resources Department, who sent Plaintiff a HIPAA form for the release of her medical records. Despite returning a completed HIPAA form for the release of her medical records to Defendant on March 11, 2016, Defendant did not send Plaintiff the requested medical records.

33. Defendant terminated Plaintiff PLONQUE's employment solely on the basis of her pregnancy.

34. Plaintiff PLONQUE was unlawfully discriminated, humiliated, degraded and

belittled, and as a result suffers loss of rights, emotional distress, loss of income, earnings and physical injury.

35. Defendant's actions and conduct were intentional, willful and malicious, and intended to harm Plaintiff PLONQUE.

36. As a result of Defendant's actions, Plaintiff PLONQUE feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

37. As a result of the acts and conduct complained of herein, Plaintiff PLONQUE has suffered a loss of income, the loss of a salary, bonus, benefits, and other compensation which such employment entails.

38. Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII

39. Plaintiff PLONQUE repeats and realleges each and every allegation made in the above paragraphs of this complaint.

40. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendants. Plaintiff complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender and/or pregnancy.

41. Defendant ST. JOHN'S EPISCOPAL HOSPITAL engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.*, by discriminating against Plaintiff because of her gender and/or pregnancy.

8

## SECOND CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL

42. Plaintiff PLONQUE repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

43. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

44. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, § 8-107(1)(a) by discriminating against Plaintiff because of her gender and/or pregnancy.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff PLONQUE respectfully requests a judgment against the Defendant:

A. Declaring that Defendant engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964 and the New York City Administrative Code, § 8-107 *et seq.*, in that Defendant discriminated against Plaintiff PLONQUE on the basis of her gender;

B. Awarding damages to Plaintiff PLONQUE for all lost wages and benefits resulting from Defendant's unlawful discrimination and to otherwise make her whole for any losses

suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff PLONQUE compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation in an amount to be proven;

D. Awarding Plaintiff PLONQUE punitive damages;

E. Awarding Plaintiff PLONQUE attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff PLONQUE such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
January 19, 2017

                         PHILLIPS & ASSOCIATES,
                         ATTORNEYS AT LAW, PLLC

By: _____
David S. Schwartz, Esq. (DS5982)
Dorina Cela, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
dschwartz@tpglaws.com
dcela@tpglaws.com

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| **To:** Myriam Plonque<br>1350 Norton Drive<br>Far Rockaway, NY 11691 | **From:** New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2016-03019 | Roxanne Zygmund, Investigator | (212) 336-3764 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Kevin J. Berry,
District Director

DEC 2 1 2016
*(Date Mailed)*

Enclosures(s)

cc: Director of Human Resources
ST. JOHN'S EPISCOPAL HOSPITAL
327 Beach 19th Street, Tower 9
Far Rockaway, NY 11691

David Schwartz, Esq.
PHILLIPS & ASSOCIATES PLLC
45 Broadway, Suite 620
New York, NY 10006